UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JESSIE SHERRICK,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-685

Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's application for supplemental security income (SSI). This matter is before the Court on

plaintiff's Statement of Errors (Doc. 12), the Commissioner's response in opposition (Doc. 17),

and plaintiff's reply memorandum. (Doc. 18).

**I. Procedural Background**

Plaintiff filed an application for SSI in November 2010,[1] alleging disability since May 26,

2005, due to a back injury, vasculitis, congestive heart failure, and depression. (Tr. 253). The

application was denied initially and upon reconsideration. Plaintiff, through counsel, requested

and was granted a *de novo* hearing before ALJ Deborah Smith. Plaintiff, a medical expert (ME),

and a vocational expert (VE) appeared and testified at the ALJ hearing. On November 19, 2012,

the ALJ issued a decision denying plaintiff's SSI application. Plaintiff's request for review by

---

[1]Plaintiff initially applied for disability benefits in March 2008, claiming a disability onset date of March 2, 2005. (Tr. 100). On September 23, 2010, following an administrative hearing, Administrative Law Judge (ALJ) Gilbert A. Sheard issued a written decision finding that plaintiff was not under a "disability" within the meaning of the Social Security Act and therefore was not eligible for SSI or disability insurance benefits. (Tr. 97-119). Plaintiff did not pursue an administrative appeal of ALJ Sheard's decision.

the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

2

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 416.920(a)(4)(i)-

(v), 416.920(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential

evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once

the claimant establishes a prima facie case by showing an inability to perform the relevant

previous employment, the burden shifts to the Commissioner to show that the claimant can

perform other substantial gainful employment and that such employment exists in the national

economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] has not engaged in substantial gainful activity since November 18, 2010, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The [plaintiff] has the following severe impairments: degenerative disc disease of the lumbar spine, diabetes, obesity, vasculitis, borderline intellectual functioning, and anxiety (20 CFR 416.920(c)).
>
> 3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except: the [plaintiff] should not climb ladders, ropes, and scaffolds; he can occasionally climb stairs; he can occasionally bend and stoop; he should not kneel, crouch, or crawl; the [plaintiff] should be allowed to change his position every hour for five minutes; the [plaintiff] should not work around unprotected heights or temperature extremes; the [plaintiff] retains the capacity to perform work which is simple or routine; he would have difficulty with multi-step procedures; he retains the capacity to perform work which is not fast paced and does not have strict production quotas; he retains the capacity to perform work which requires only superficial contact with others.

3

5. The [plaintiff] is unable to perform any past relevant work (20 CFR 416.965).[2]

6. The [plaintiff] was born [in] . . . 1974 and was 36 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.969, and 416.969(a)).[3]

10. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since November 18, 2010, the date the application was filed and continuing through the date of this decision (20 CFR 416.920(g)).

(Tr. 28-39).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[2]Plaintiff's past relevant work was as an automotive technician. (Tr. 38).

[3]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform unskilled sedentary jobs such as order clerk and assembler (585 jobs in the local economy and 504,700 jobs in the national economy). (Tr. 39, 85).

4

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff argues that: (1) the ALJ erred by assigning "little weight" to the opinion of plaintiff's treating physician, Dr. Catherine L. Farinet, M.D.; (2) the ALJ erred by assigning "little weight" to the report of consultative examining physician Dr. David G. Provaznik, D.O.; (3) the ALJ erred by rendering an RFC assessment that is not based on substantial evidence; and (4) the ALJ erred by finding that plaintiff's chronic obstructive pulmonary disease (COPD) is not a severe impairment. (Doc. 12).

5

### 1. The ALJ did not err in weighing the medical opinion evidence.

Plaintiff alleges as his first and second assignments of error that the ALJ improperly weighed the medical opinion evidence. Specifically, plaintiff contends that the ALJ erred by giving "little weight" to the opinions of his treating physician, Dr. Farinet, and the one-time examining physician, Dr. Provaznik. (Doc. 12 at 10-18).

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors

set forth in 20 C.F.R. § 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart,* 710 F.3d at 376; *Wilson,* 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 416.927(c)(2)(i)(ii); *Wilson,* 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(2)(i)(ii); *Gayheart,* 710 F.3d at 376; *Wilson,* 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole,* 661 F.3d at 937 (citing former 20 C.F.R. § 404.1527(d)(2)). *See also Wilson,* 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole,* 661 F.3d at 937 (citing SSR 96-2p).

The opinion of a non-treating but examining source is entitled to less weight than the opinion of a treating source, but is generally entitled to more weight than the opinion of a source who has not examined the claimant. *Ealy v. Commissioner of Soc. Sec.,* 594 F.3d 504, 514 (6th Cir. 2010) (citing former 20 C.F.R. § 404.1527(d)(1)). *See also Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 875 (6th Cir. 2007)). When deciding what weight to give a non-treating source's opinion, the ALJ should consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other

7

to support or contradict the opinion. 20 C.F.R. § 416.927(c). Because a non-examining source has no examining or treating relationship with the claimant, the weight to be afforded the opinion of a non-examining source depends on the degree to which the source provides supporting explanations for his opinions and the degree to which his opinion considers all of the pertinent evidence in the record, including the opinions of treating and other examining sources. 20 C.F.R. § 416.927(c)(3).

### a. Weight to the treating physician's opinion

Plaintiff's treating primary care physician, Dr. Farinet, completed a Physical Capacity Evaluation on June 5, 2012. (Tr. 549-51). She listed plaintiff's physical diagnoses as back pain due to a 2005 injury and COPD. Dr. Farinet limited plaintiff to lifting 10 pounds occasionally and 1-2 pounds frequently; standing/walking for less than 30 minutes in an 8-hour day and for 15 minutes at a time before needing to sit; sitting for less than 4 hours in an 8-hour day and for 30 minutes before needing to stand; no twisting, stooping/bending, crouching, or climbing ladders; only occasional stair climbing and reaching; and no pushing/pulling. Dr. Farinet also opined that plaintiff required an assistive device to walk but not to balance, and he would need to lie down approximately 4 times during a work day. (Tr. 549-50). She indicated he should avoid even moderate exposure to temperature extremes, wetness, and vibration, as well as concentrated exposure to humidity and fumes, odors, and dust. (Tr. 550-51). Dr. Farinet concluded that plaintiff could do a job with the above limitations 0-3 days per week and less than 3 consecutive weeks per month and that plaintiff's limitations had been in place since 2005. (Tr. 551).

The ALJ gave the Dr. Farinet's opinion "little weight." (Tr. 37). The ALJ rejected Dr. Farinet's June 2012 assessment because plaintiff testified he had gone over the form with Dr. Farinet and informed her of his limitations. (Tr. 37). The ALJ found that Dr. Farinet had apparently accepted plaintiff's self-reported limitations at face value so that the assessment was "merely a self-report" of plaintiff's condition. (*Id.*). In addition, the ALJ found that Dr. Farinet provided only diagnoses and symptoms to support her assessment and did not note objective findings, laboratory or examination findings, or plaintiff's treatment history in her report. (*Id.*).

Plaintiff contends that the ALJ should have given Dr. Farinet's opinion "controlling weight" because it is well-supported by medically acceptable data and is not inconsistent with other substantial evidence in the record. Plaintiff alleges that it was not reasonable for the ALJ to conclude that Dr. Farinet accepted his self-reported subjective limitations at face value, and Dr. Farinet's findings are well-supported by objective findings and treatment notes which document fluid in the right knee, tenderness and popping with movement (Tr. 418-19); tenderness to palpation over the lumbosacral paraspinal muscles on the right side; 1+ reflexes, and 1+ lower extremity edema (Tr. 414, 416, 562); course breath sounds on pulmonary examination (Tr. 412); diffuse tenderness of the hip and pain with range of motion testing (Tr. 573); x-ray findings of mild multilevel degenerative disc disease and facet joint arthropathy made in June 2012 (Tr. 579); and some congenital narrowing of the spinal canal due to shortened pedicles (*Id.*). (Doc. 12 at 13-15). Plaintiff notes that Dr. Farinet indicated on the assessment that she relied on the results of a Functional Capacity Evaluation (FCE) completed by Chris Banks, OTR/L, on May 30, 2012 (Tr. 544-47), as well as findings of reduced range of motion on physical examination. (Doc. 12 at 12). Plaintiff further notes that Dr. Farinet verified in a letter dated January 5, 2011,

9

that plaintiff's wife assisted plaintiff with his activities of daily living and that Family and Medical Leave Act (FMLA) paperwork had been completed for plaintiff's wife so that she could provide "essential care" for him. (*Id.* at 13, citing Tr. 489).

The ALJ gave "good reasons" for her decision to afford "little weight" to Dr. Farinet's opinion, and those reasons find substantial support in the record. The ALJ reasonably determined that Dr. Farinet's opinion was not supported by objective medical findings. Rather, the only "medical findings" listed by Dr. Farinet in her report were "back pain" and "decreased range of motion." (Tr. 550). Nor do the portions of the record cited by plaintiff demonstrate that Dr. Farinet's opinion is well-supported by objective medical evidence. The medical evidence referenced by plaintiff shows that he sustained a knee injury in late 2009 (Tr. 418-19) and Dr. Farinet reported lower extremity edema in July 2010 and October 2011 (Tr. 414, 561); however, Dr. Farinet makes no reference to either a knee injury or edema in her assessment. Similarly, although plaintiff complained of hip pain in July 2011 (Tr. 573), Dr. Farinet made no objective findings related to plaintiff's hip and she did not mention hip symptoms in her assessment. Further, the FMLA paperwork referenced by plaintiff states that Dr. Farinet was "verifying [plaintiff's] disability for the month of January, 2011" only. (Tr. 489). Finally, the only objective lumbar findings noted by plaintiff were mild in nature. (Tr. 579). Accordingly, the ALJ reasonably discounted Dr. Farinet's assessment based on her finding that the restrictions Dr. Farinet assessed were derived solely from plaintiff's self-reported limitations and were not supported by objective medical findings.

**b. Weight to the consultative examining physician's opinion**

The consultative examining physician, Dr. Provaznik examined plaintiff and prepared a report dated March 25, 2011. (Tr. 500-02). Plaintiff's chief complaint at that time was chronic low back pain. On physical examination, Dr. Provaznik found that plaintiff had pain with modified and straight leg raising on the right side; his gait was normal; he did not use an assistive device to walk; he was able to stand on one foot for five seconds; he was able to flex but only about 40 degrees at the waist; and his sensation appeared to be intact. (Tr. 501). Dr. Provaznik's impression was chronic low back pain (suspect non-neuropathic), morbid obesity with increased lordotic curve, underlying congenital issues including IGA nephropathy and lipoplasty vasculitis, hypertension related to the kidney, and non-insulin dependent diabetes. (Tr. 502). Dr. Provaznik concluded: "His physical condition is poor with poor muscle strength, poor balance through his lower extremities and loss of balance secondary to his obesity. Patient would not be able to perform, I feel, in a physical work environment at this time." (*Id.*).

The ALJ gave Dr. Provaznik's assessment "little weight" because: (1) Dr. Provaznik rendered an opinion on the ultimate issue of disability, which is a matter reserved to the Commissioner, by concluding that plaintiff was not capable of working in a physical work environment without providing any specific functional limitations to support his assessment; and (2) plaintiff's examination was largely normal and did not support the conclusion of disability. (Tr. 37). Plaintiff concedes that the last portion of Dr. Provaznik's opinion is a finding of disability, which is a conclusion that is properly reserved to the judgment of the Commissioner. (Doc. 12 at 17). However, plaintiff alleges Dr. Provaznik made specific findings which support his conclusion and which the ALJ erroneously disregarded. (*Id.*).

11

Substantial evidence supports the ALJ's decision to discount Dr. Provaznik's opinion. An ALJ is not required to accept a physician's conclusion that a patient is disabled. 20 C.F.R. § 416.927(d)(1). Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a physician's opinion that a patient is disabled is not entitled to any special deference. *Id*. *See also Warner v. Comm'r of Soc. Sec*., 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.") (citation and brackets omitted). Thus, the ALJ was entitled to reject Dr. Provaznik's opinion that plaintiff is disabled.

Further, plaintiff correctly notes that Dr. Provaznik reported some abnormal findings of reduced range of motion of the dorsolumbar spine and pain with modified and straight leg raising on the right side. (Tr. 501). However, a review of Dr. Provaznik's report shows that his examination findings were otherwise largely normal. For example, Dr. Provaznik found that plaintiff's gait was unremarkable, he did not require an ambulatory aid, and sensation appeared to be intact. (*Id*.). The ALJ was entitled to reject Dr. Provaznik's opinion that plaintiff was unable to perform physical work based on the paucity of positive examination findings supporting his opinion.

### c. Conclusion

The ALJ did not err by giving "little weight" to the opinions of the treating and consultative examining physicians. The ALJ's decisions to discount these opinions are substantially supported by the evidence of record. Plaintiff's first and second assignments of error should be overruled.

### 3. The ALJ erred by finding plaintiff's COPD was a "non-severe" impairment.

The Court will combine plaintiff's third and fourth assignments of error and consider them together. Plaintiff alleges as his third assignment of error that the ALJ erred by formulating an RFC that is not based on substantial evidence. (Doc. 12 at 18-21). Plaintiff alleges that the RFC is unsupported because: (1) the ALJ failed to take plaintiff's COPD into consideration; (2) the ALJ failed to account for certain upper extremity limitations assessed by the occupational therapist in the FCE, including no floor to waist lifting; no lifting or carrying on a frequent basis, except for shoulder to waist lifting; and only occasional overhead, forward, and below the knee reaching (*Id*. at 19, citing Tr. 546); and (3) the ALJ failed to account for plaintiff's use of a cane. (*Id*. at 18-19). Plaintiff alleges as his fourth assignment of error that the ALJ erred by finding his COPD to be a "non-severe" impairment. (*Id*. at 20-21).

In response, the Commissioner argues that the RFC finding encompasses the lifting restrictions assessed as part of the FCE; the ALJ reasonably credited the findings of the ME, Dr. Lee Allen Fisher, M.D., over the findings of the occupational therapist as to any additional nonexertional limitations; and the ALJ reasonably determined that there is no medical evidence that plaintiff was prescribed a cane or that he otherwise required a cane to assist him with standing. (Doc. 17 at 8-10).

### a. Lifting and reaching restrictions assessed in the FCE

The ALJ did not err by failing to include additional upper extremity limitations in the RFC. In formulating the RFC for a restricted range of sedentary work, the ALJ gave "great weight" to the testimony of the ME, Dr. Fischer. (Tr. 37). The ALJ found that Dr. Fischer had the opportunity to review the totality of the medical evidence and consider plaintiff's testimony;

the ME cited objective evidence and lab findings to support his opinion; and his assessment was consistent with the "relatively benign imaging and physical exam reports." (*Id.*). These were valid reasons to credit Dr. Fischer's testimony. *See* 20 C.F.R. § 416.927(c)(3) (the weight to be afforded the opinion of a non-examining source depends on the degree to which the source provides supporting explanations for his opinions and the degree to which his opinion considers all of the pertinent evidence in the record, including the opinions of treating and other examining sources). *See also Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 570 (6th Cir. 1989) (medical expert testimony consistent with the evidence of record can constitute substantial evidence to support the Commissioner's decision). Dr. Fischer in turn stated that he "put a lot of stock" in the occupational therapist's FCE. (Tr. 78). However, Dr. Fischer did not adopt the FCE wholesale. Dr. Fischer opined that plaintiff was capable of performing full-time sedentary work with some postural and environmental limitations; *i.e.*, he could occasionally climb stairs; never climb ladders, ropes or scaffolds; occasionally bend and stoop; never kneel, crouch or crawl; avoid unprotected heights and temperature extremes; and change positions at the workstation every hour for five minutes. (Tr. 79). Dr. Fischer omitted the remainder of the postural and environmental restrictions included in the FCE and gave no indication that additional reaching and limitations other than those he identified should be adopted. The ALJ was entitled to credit Dr. Fischer's opinion over that of the occupational therapist, who is not an "acceptable medical source" under the regulations and whose opinion is not entitled to any special deference. *See* 20 C.F.R. § 416.913(d)(1) (medical sources not listed in § 416.913(a) such as nurse practitioners, physicians' assistants and therapists are considered to be "other sources" rather than "acceptable medical sources"). *See also Nierzwick v. Comm'r of Soc. Sec.*, 7

F. App'x 358, 363 (6th Cir. 2001) (physical therapist's report not afforded significant weight because therapist not recognized as an acceptable medical source); *Jamison v. Comm'r,* No. 1:07-cv-152, 2008 WL 2795740, at *10 (S.D. Ohio July 18, 2008) (same). Plaintiff has not pointed to any medical evidence to show that he has additional restrictions in his ability to use his upper extremities and that the ALJ erred by failing to incorporate these restrictions into the RFC finding. Insofar as plaintiff alleges the ALJ erred by failing to incorporate additional lifting and reaching restrictions into the RFC finding, plaintiff's third assignment of error should be overruled.

**b. Plaintiff's use of a cane**

Plaintiff argues that the ALJ erred by failing to account for his need to use a cane when formulating his RFC. (Doc. 12 at 19). Plaintiff notes that the ALJ incorporated into the RFC finding a requirement that he "should be allowed to change his position every hour for five minutes." (*Id.,* citing Tr. 31). Plaintiff further notes that although the ALJ questioned in her decision whether plaintiff was prescribed a cane as opposed to choosing to use it on his own (Tr. 36), Dr. Farinet indicated in her assessment that plaintiff must use an assistive device to ambulate. (Doc. 12 at 19, citing Tr. 549). Plaintiff argues that it follows from these restrictions that he could not perform the jobs identified by the VE, who testified that all work would be precluded if plaintiff had to stand hourly while using a cane to balance or stand because he could not work one-handed. (*Id; see* Tr. 86-88).

The record shows that Dr. Farinet checked a box on her June 2012 assessment indicating that plaintiff must use a cane to walk. (Tr. 549). However, Dr. Farinet did not provide the required medical documentation to establish the specific circumstances under which plaintiff

must use a cane. *See* Social Security Ruling 96-9p, 1996 WL 374185, at *7 ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (*i.e.*, whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information."). Even assuming plaintiff's use of a cane for walking was adequately documented, plaintiff does not point to any medical evidence indicating that he requires a cane to stand. To the contrary, Dr. Farinet checked a box on the June 2012 assessment indicating that plaintiff does *not* use a cane to balance. (Tr. 549). Thus, the record does not show that plaintiff's use of a cane would preclude him from performing the sedentary jobs identified by the VE. (*See* Tr. 79, 87-88). *See also* Social Security Ruling 96-9p, 1996 WL 374185, at *7 ("[I]f a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded."). Insofar as plaintiff alleges that the ALJ erred by failing to account for his use of a cane in the RFC finding, plaintiff's third assignment of error should be overruled.

### c. Plaintiff's COPD

Plaintiff alleges that the ALJ erred by finding his COPD was a "non-severe" impairment and by failing to take his COPD into consideration when formulating the RFC. (Doc. 12 at 18, 20-21). Plaintiff contends that his COPD is a severe impairment because he requires "regular medical intervention in regards to his COPD." (*Id.* at 20). Plaintiff also notes that both the state agency reviewing physicians and Dr. Farinet imposed limitations against concentrated exposure to fumes, odors, dust, etc. (*Id.* at 21, citing Tr. 132, 150, 551). Plaintiff contends that the ALJ

16

erred by failing to include these environmental limitations in the RFC. In response, the Commissioner argues that the ALJ reasonably considered plaintiff's COPD, and plaintiff has not pointed to any additional limitations caused by this condition which the ALJ failed to include in the RFC finding. (Doc. 17 at 8).

The regulations define a severe impairment or combination of impairments as one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 416.920(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, which in the physical context means functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling. 20 C.F.R. § 416.921(b). Plaintiff is not required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Sec'y of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a "*de minimus* hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). *See also Rogers*, 486 F.3d at 243 n.2.

The ALJ considered plaintiff's COPD and other respiratory ailments when determining his severe impairments. (Tr. 28). In concluding that plaintiff's COPD was not a severe impairment, the ALJ noted that plaintiff uses an inhaler for this condition and he has experienced

17

bouts of pneumonia and bronchitis. (Tr. 28, citing Tr. 405-69, 508-40, 552-71, 572-78). The

ALJ nonetheless found that plaintiff does not require regular medical intervention to control his

condition. (Tr. 28). The ALJ further noted that chest x-rays had disclosed only minimal scarring

of the left lung (Tr. 538), and she found that the ME had testified that COPD was not one of

plaintiff's severe impairments. (Tr. 28). The evidence shows, however, that plaintiff has

received regular medical care for his COPD, which was diagnosed in March 2011 based on a

chest x-ray after plaintiff presented to the emergency room with acute bronchitis. (Tr. 529-30).

Subsequently, in her April 2012 treatment notes, Dr. Farinet reported that plaintiff had COPD for

which he needed a refill of the medication ProAir, she discussed additional treatment of COPD

with plaintiff, and she prescribed Singulair for further treatment of plaintiff's COPD. (Tr. 552-

53). Thus, the record shows that plaintiff has required regular medical care for his COPD during

the period of alleged disability. Moreover, the medical evidence indicates that plaintiff's COPD

imposes functional limitations. Dr. Farinet listed COPD among plaintiff's diagnoses in the

Physical Capacity Evaluation dated June 5, 2012, and she imposed environmental restrictions

against concentrated exposure to humidity and fumes, odors and dust.[4] (Tr. 548-51). The ALJ

did not incorporate the restrictions against exposure to fumes, odors, and dust into the RFC;

instead, the ALJ adopted the ME's testimony, which incorporated environmental restrictions

against only temperature extremes and unprotected heights. (Tr. 79, 85-86). A review of the

ME's testimony shows that the ME was not aware of plaintiff's COPD and therefore did not

consider it. When the ALJ asked the ME about plaintiff's COPD, the ME responded: "I really

---

[4]The state agency reviewing physicians also imposed restrictions against exposure to fumes, odors, dust, gases, and poor ventilation in their April and September 2011 reports due to "[shortness of breath] and obesity]." (Tr. 132, 150).

didn't see -- I didn't even write that down, so if he's got any, I did not even consider it." (Tr. 77). Accordingly, the ALJ did not reasonably interpret the ME's testimony to mean that Dr. Fischer did not consider plaintiff's COPD to be a severe impairment based on his review of the medical evidence.

Thus, the record discloses that plaintiff suffers from COPD for which he has been treated with different types of medication by his primary care physician. Further, both plaintiff's treating physician and the state agency reviewing physicians imposed environmental restrictions which the ALJ failed to address in her decision. The ALJ instead relied on the testimony of the ME when assessing plaintiff's environmental restrictions based on her unsupported determination that Dr. Fischer had found the impairment was not severe, despite Dr. Fischer's failure to even consider plaintiff's COPD. Substantial evidence does not support the ALJ's finding that plaintiff's COPD does not impose any functional limitations and has no more than a minimal impact on his ability to perform work activity. Plaintiff's third and fourth assignments of error should be sustained insofar as plaintiff alleges that the ALJ erred by finding her COPD was a "non-severe" impairment and by failing to consider how the impairment impacts plaintiff's RFC.

## III. Conclusion

This matter should be reversed and remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher v. Sec. of HHS*, 17 F.3d 171, 176 (6th Cir. 1994). Reversal and remand are required for a proper analysis of plaintiff's

19

COPD. On remand, the ALJ should elicit additional medical expert and vocational expert testimony as warranted.

**IT IS THEREFORE RECOMMENDED THAT**:

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to 42 U.S.C. § 405(g).

Date: ___1/13/15___

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JESSIE SHERRICK,
      Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

Case No. 1:13-cv-685
Dlott, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).